**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **LINTON J. GRIFFIN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-cv-411-ALM-KPJ** |
| | § | |
| **INOGEN,** | § | |
| | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant Inogen's ("Defendant") Second Motion to Dismiss Under Rule 12(b) and Brief in Support (the "Second Motion to Dismiss") (Dkt. 15), to which Plaintiff Linton J. Griffin ("Plaintiff") filed a response (the "Response") (Dkt. 18), Defendant filed a reply (the "Reply") (Dkt. 19), and Plaintiff filed a sur-reply (the "Sur-Reply") (Dkt. 21). For the following reasons, the Court recommends that the Second Motion to Dismiss (Dkt. 15) be **GRANTED IN PART** and **DENIED IN PART**.

## I.     BACKGROUND

On May 8, 2023, Plaintiff, proceeding *pro se*, filed a complaint (the "Complaint") (Dkt. 1) against Defendant, identified as "Inogen."[1] Dkt. 1. In the Complaint (Dkt. 1), Plaintiff asserts that Gary Wilson ("Mr. Wilson"), Plaintiff's supervisor, called him racial slurs, such as the "N-word," and asked him to discuss sexual matters. *Id.* at 3. Plaintiff alleges that he reported this matter to Defendant's human resources department ("Human Resources") and, at some point, requested a transfer. *See id.* According to Plaintiff, this request was denied, and Plaintiff received "negative evaluations" thereafter. *Id.* Subsequently, Plaintiff filed a charge with the EEOC (the "First

---

[1] The Complaint (Dkt. 1) identifies Defendant as "Inogen." *See* Dkts. 1 at 1. However, Defendant asserts that its correct legal name is "Inogen, Inc." Dkt. 5 at 1.

Charge") (Dkt. 1-3). *See* Dkt. 1-3. Plaintiff alleges that after he filed the First Charge, he was subjected to increased work scrutiny, verbally abused by Mr. Wilson, denied access to mandatory training received by his co-workers, and, eventually, terminated. Dkt. 1 at 3. Thereafter, Plaintiff filed a second charge with the EEOC (the "Second Charge") (Dkt. 1-4). *See* Dkt. 1-4.

Based on the foregoing allegations, Plaintiff asserts several unspecified discrimination and retaliation claims arising under Title VII of the Civil Rights Act of 1964 ("Title VII"). *See* Dkt. 1 at 1, 3. Construed liberally, Plaintiff appears to assert the following claims: (1) disparate treatment based on his race, color, and sex; (2) retaliatory discharge based on his complaints to Human Resources and the filing of the First Charge (Dkt. 1-3); (3) hostile work environment arising out of Mr. Wilson's racial slurs and request to discuss sexual matters; and (4) various other retaliation claims arising after the filing of the First Charge (Dkt. 1-3).[2]

On June 2, 2023, the Clerk of Court issued summons (the "First Summons") to "Inogen," which Plaintiff returned executed on June 26, 2023. *See* Dkts. 3–4. On July 5, 2023, Defendant filed the Motion to Dismiss Under Rule 12(b)(4) and (5) and brief in Support (the "First Motion to Dismiss") (Dkt. 5), arguing that this case should be dismissed because: (1) the First Summons incorrectly named Defendant as "Inogen" rather than "Inogen, Inc"; (2) Plaintiff improperly mailed the First Summons himself; and (3) Plaintiff mailed the First Summons to "Inogen" rather than to Defendant's registered agent or someone authorized to accept service on Defendant's behalf. *See* Dkt. 5. On October 23, 2023, the Court recommended that the First Motion to Dismiss (Dkt. 5) be granted in part and denied in part. Dkt. 10 at 1, 7. Specifically, the Court found that, while service was improper and the First Summons was defective, Defendant was not prejudiced

---

[2] Plaintiff alleges that he was subjected to several distinct retaliatory acts, but it is unclear whether he intended to assert separate claims of retaliation, or whether these acts were intended to be evidence bolstering a single retaliation claim. *See* Dkt. 1 at 3. Because Plaintiff is proceeding *pro se*, and because "each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" within the meaning of Title VII, the Court evaluates these acts as separate claims. *E.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

by these errors. *See id.* at 5–7. On this basis, the Court recommended that Plaintiff's defective service be quashed, but that he be given an opportunity to rectify the errors by attempting service in compliance with Rule 4 of the Federal Rules of Civil Procedure. *Id.* at 7. On November 13, 2023, the District Judge adopted the Court's recommendation and ordered Plaintiff to reattempt service by December 13, 2023. *See* Dkt. 13.

On November 16, 2023, the Clerk of Court issued summons (the "Second Summons") to "InCorp Services, Inc."—Defendant's registered agent for service of process. *See* Dkt. 14 at 1. On November 20, 2023, Defendant filed the Second Motion to Dismiss (Dkt. 15), wherein Defendant argues, once again, that service was defective because the Second Summons improperly named Defendant's registered agent rather than "Inogen, Inc." *See* Dkt. 15 at 9–10. Defendant further argues that two of Plaintiff's claims should be dismissed because he failed to exhaust his administrative remedies, and that all of Plaintiff's claims should be dismissed because they fail to state a claim upon which relief can be granted. *See id.* at 11–28.

On December 4, 2023, the Clerk of Court issued summons (the "Third Summons") to "Inogen, Inc." Dkt. 17 at 1. That same day, Plaintiff filed the Response (Dkt. 18), wherein Plaintiff requests that the Second Motion to Dismiss (Dkt. 15) "be denied in full due to the Adverse Actions described in the Complaint and the failure of [Defendant] to provide a safe working environment." Dkt. 18 at 1. On December 11, 2023, Defendant filed the Reply (Dkt. 19). *See* Dkt. 19. On December 13, 2023, Plaintiff returned the Third Summons, wherein Plaintiff's private process server represents that the Third Summons, addressed to "Inogen, Inc.," was properly served on Defendant's registered agent on December 6, 2023. *See* Dkt. 20 at 1. That same day, Plaintiff filed the Sur-Reply (Dkt. 21). *See* Dkt. 21.

## II.    LEGAL STANDARD

### A.    Improper Service

The plaintiff bears the burden of proof regarding the sufficiency of service of process. *See* FED. R. CIV. P. 4(c); *see also Coleman v. Bank of N.Y. Mellon*, 969 F. Supp. 2d 736, 744 (N.D. Tex. 2013) (citing *Lechner v. Citimortgage, Inc.*, No. 09-cv-302, 2009 WL 2356142, at *1 (N.D. Tex. July 29, 2009)). "When process is insufficient, 'federal courts have broad discretion to dismiss an action.'" *Coleman*, 969 F. Supp. 2d at 744 (quoting *Chapman v. Trans Union LLC*, No. H-11-553, 2011 WL 2078641, at *1 (S.D. Tex. May 26, 2011)); *see also Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 645 (5th Cir. 1994) ("A district court, however, has broad discretion to dismiss an action for ineffective service of process . . . ." (citing *George v. U.S. Dep't of Labor*, 788 F.2d 1115, 1116 (5th Cir. 1986))).

"When a district court finds insufficient process or insufficient service, it may either dismiss the suit for failure to effect service or quash the service, giving the plaintiff an opportunity to reserve the defendant." *Currington v. XTO Energy, Inc.*, No. 12-cv-589, 2013 WL 12155258, at *1 (E.D. Tex. July 2, 2013) (collecting cases). Additionally, "defects in the summonses are not fatal if they do not prejudice the defendant." *Coleman*, 969 F. Supp. 2d at 744 (collecting cases). For service to be effective, the plaintiff must comply with the requirements of Federal Rule of Civil Procedure 4. *See* FED. R. CIV. P. 4. Federal Rule of Civil Procedure 4(b) provides that, on or after filing the complaint, "the plaintiff may present a summons to the clerk for signature and seal. If the summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant." FED. R. CIV. P. 4(b).

## B.    Failure to State a Claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). "In evaluating motions to dismiss filed under Rule 12(b)(6), the court 'must accept all well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff.'" *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th. Cir. 1986)). "Further, '[a]ll questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor.'" *Id.* (quoting *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)). However, courts are "not bound to accept as true 'a legal conclusion couched as a factual allegation.'" *In re Ondova Ltd.*, 914 F.3d 990, 993 (5th Cir. 2019) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"The well-pleaded facts must permit the court 'to infer more than the mere possibility of misconduct.'" *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That is, the complaint "must allege enough facts to move the claim 'across the line from conceivable to plausible.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011), *as revised* (Dec. 16, 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether the plausibility standard has been met is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 663–64).

At the motion to dismiss stage, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Allen v. Vertafore, Inc.*, 28 F.4th 613,

616 (5th Cir. 2022) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

### III.    ANALYSIS

#### A.    Improper Service

In the Second Motion to Dismiss (Dkt. 15), Defendant argues that the Second Summons improperly named its registered agent, rather than "Inogen, Inc." *See* Dkt. 15 at 9–10. Plaintiff concedes as much by failing to address this argument in the Response (Dkt. 18). *See* Dkt. 18. However, Plaintiff rectified this deficiency by serving the Third Summons within the time parameters prescribed by the District Judge. *Compare* Dkt. 13 (ordering Plaintiff "to serve the summons and complaint upon Defendant in compliance with Rule 4 of the Federal Rules of Civil Procedure" by December 13, 2023), *with* Dkt. 17 (naming "Inogen, Inc" in the Third Summons), *and* Dkt. 20 (executing the Third Summons on December 6, 2023). Thus, the Second Motion to Dismiss (Dkt. 15) should be denied as moot insofar as it seeks dismissal based on improper service.

#### B.    Failure to State a Claim

In the Second Motion to Dismiss (Dkt. 15), Defendant raises a number of challenges to the sufficiency of Plaintiff's allegations. *See* Dkt. 15. First, Defendant argues that Plaintiff's disparate treatment claims, as well as his retaliation claim based on the denied transfer request should be dismissed because Plaintiff failed to exhaust his administrative remedies. *See* Dkt. 15 at 12–14. Second, Defendant argues that all of Plaintiff's claims fail to state a plausible claim for relief. *See id.* at 15–28. The Court considers these issues in turn below.

##### 1.    Administrative Exhaustion

Before filing a Title VII claim, an employee "must first exhaust [his] administrative remedies by filing a charge . . . with the EEOC." *Mack v. John L. Wortham & Son, L.P.*, 541 F. App'x 348, 358 (5th Cir. 2013) (citing *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006)).

While exhaustion is not jurisdictional, it "remains, as it always has, an absolute prerequisite to filing suit." *Betts v. Winco Foods, LLC*, No. 19-cv-152, 2020 WL 512294, at *3 (E.D. Tex. Jan. 31, 2020) (citing *Fort Bend County v. Davis*, 587 U.S. 541, 552 (2019)). However, "because 'the provisions of Title VII were not designed for the sophisticated,' and because most complaints are initiated *pro se*, the scope of an EEOC complaint should be construed liberally." *Pacheco*, 448 F.3d at 788 (italics added) (first quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970); and then citing *Fellows v. Universal Rests., Inc.*, 701 F.2d 447, 451 (5th Cir. 1983)). As a result, a Title VII claim

> may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.

*Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993) (quoting *Fellows*, 701 F.2d at 451); *see Anderson v. Venture Express*, 694 F. App'x 243, 247 (5th Cir. 2017) (same). "Courts assess whether a claim is 'like or related' to the underlying EEOC charge through a 'fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and by looking slightly beyond its four corners, to its substance rather than its label.'" *Stingley v. Watson Quality Ford*, 836 F. App'x 286, 291 (5th Cir. 2020) (cleaned up) (quoting *Pacheco*, 448 F.3d at 789).

### i.    Disparate Treatment

In the Complaint (Dkt. 1), Plaintiff alleges that his employment was terminated due to his race, color, and sex. Dkt. 1 at 3. While Plaintiff repeatedly emphasized that he was subject to discrimination in the First Charge (Dkt. 1-3), submitted prior to his termination, this allegation does not expressly appear in the Second Charge (Dkt. 1-4). *Compare* Dkt. 1-3, *with* Dkt. 1-4. Indeed, Plaintiff only checked the box for "retaliation" and asserted that he was "repeatedly retaliated against" for filing the First Charge (Dkt. 1-3). *See* Dkt. 1-4 at 1. Because the factual allegations contained in the Second Charge (Dkt. 1-4) "relate only to his claim of retaliation,"

Defendant argues that Plaintiff failed to "exhaust his administrative remedies . . . with respect to any claims of discrimination connected to his employment termination." Dkt. 15 at 13. Plaintiff does not specifically respond to this argument. *See* Dkts. 18; 21. The Court disagrees with Defendant.

While Plaintiff did not check the box for discrimination based on "race," "color," or "sex" in the Second Charge (Dkt. 1-4), he checked those boxes in the First Charge (Dkt. 1-3) and, in fact, alleged facts in support thereof. *Compare* Dkt. 1-4 at 1, *with* Dkt. 1-3 at 1. Indeed, in the Second Charge (Dkt. 1-4), Plaintiff asserted that he endured several retaliatory acts because he "complained about discrimination"—both internal complaints and the filing of the First Charge (Dkt. 1-3). *See* Dkt. 1-4 at 1 ("[Plaintiff] complained about discrimination."; "[Plaintiff] was retaliated against due to his complaints about discrimination."; "[Plaintiff] filed a charge of discrimination on or about December 3, 2021 . . . ."). By identifying in the Second Charge (Dkt. 1-4) the alleged discrimination contained in the First Charge (Dkt. 1-3), a subsequent investigation into Defendant's "underlying motives" for the termination—including potential discriminatory bases for that termination—"could reasonably be expected to grow out of [the] two charges." *See Esparza v. Advanced Network Mgmt., Inc.*, 688 F. Supp. 3d 505, 514 (W.D. Tex. 2023) (cleaned up) (quoting *Jennings v. Towers Watson*, 11 F.4th 335, 343 (5th Cir. 2021)). In reaching the opposite conclusion, Defendant impermissibly focuses on the fact that Plaintiff did not check the boxes for discrimination based on race, color, or sex in the Second Charge (Dkt. 1-4), and did not specifically assert that his termination was based thereon. *See* Dkt. 15 at 12–13. In so doing, Defendant construes "the scope of the investigation that could reasonably be expected grow out of [the] EEOC charges too narrowly." *See Jennings*, 11 F.4th at 342. For these reasons, the Court concludes that Plaintiff exhausted his administrative remedies with respect to his disparate treatment claim.

### ii.    Retaliation Based on Denial of Transfer

In the Complaint (Dkt. 1), Plaintiff alleges that, after reporting Mr. Wilson's use of "racial slurs" and request to "discuss sexual matters," Human Resources denied his "transfer request." Dkt. 1 at 3. This retaliatory act is not mentioned in the First Charge (Dkt. 1-3) or the Second Charge (Dkt. 1-4). *See* Dkts. 1-3; 1-4. Accordingly, Defendant argues that the purported denial of Plaintiff's transfer request is a "new, different alleged retaliatory act" and, thus, "Plaintiff did not exhaust his administrative remedies with respect to this claim." Dkt. 15 at 13–14. Once again, Plaintiff does not specifically respond to this argument. *See* Dkts. 18; 21. The Court disagrees with Defendant.

In the First Charge (Dkt. 1-3), Plaintiff checked the box for "retaliation" and indicated that he was "retaliated against for opposing discrimination." Dkt. 1-3 at 1. Plaintiff also asserted that, after reporting Mr. Wilson's "racial epithets" and request to "discuss sexual matters," he faced several, specific retaliatory acts—including acts by Human Resources. *See id.* at 1–2. Looking slightly beyond the four-corners of the First Charge (Dkt. 1-3), the Court concludes that this retaliation claim is "like or related to the charge's allegations." *Fine*, 995 F.2d at 578 (quoting *Fellows*, 701 F.2d at 451). The Court is particularly persuaded by the fact that Plaintiff checked the box for retaliation, generally asserted that he was retaliated against for opposing discrimination, and specifically asserted that Human Resources engaged in retaliatory acts of its own. *See* Dkt. 1-3 at 1–2. Based on these facts, the EEOC investigation would likely reveal similar actions taken by Human Resources. *See, e.g.*, *Lewis-Smith v. Baylor Reg'l Med. Ctr. at Plano*, No. 20-cv-27, 2021 WL 1090746, at *3 (E.D. Tex. Mar. 19, 2021) (holding that administrative remedies were exhausted with respect to a hostile work environment claim because the EEOC charge and intake questionnaire included "complaints of racism"). For these reasons, the Court finds that Plaintiff

has exhausted his administrative remedies with respect to his retaliation claim based on the denial of his requested transfer.

Defendant reaches the opposite conclusion by erroneously arguing that every claim must be enumerated in the EEOC charge. *See* Dkt. 15 at 13–14 ("Plaintiff made numerous other allegations of purported retaliatory actions, but nothing related to a denied transfer request. The alleged denial of a transfer is a new, different alleged retaliatory act that was never included in Plaintiff's EEOC charges."). That is not the law in the Fifth Circuit. As discussed above, a Title VII claim "may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations." *Fine*, 995 F.2d at 578 (quoting *Fellows*, 701 F.2d at 451). Defendant fails to cite the governing law and, as a result, does not address its applicability, or lack thereof, to the present case. *See* Dkt. 15 at 13–14. Likewise, Defendant fails to engage in the fact-intensive analysis required to determine whether Plaintiff's claim is like or related to the allegations in the First Charge (Dkt. 1-3). *See id.*

Instead, Defendant cites several substantively and procedurally inapposite cases. For example, Defendant cites *Vuyanich v. Republic National Bank of Dallas*, 723 F.2d 1195 (5th Cir. 1984), for the proposition that "additional claims of discrimination in promotion, transfer, compensation, job classification, and job assignment cannot be 'bootstrapped' onto [the] original claim alleging racial discrimination in termination." Dkt. 15 at 14. But in *Vuyanich*, the Fifth Circuit referenced bootstrapping with respect to several intervening plaintiffs who sought to join a class and assert claims "broader than the hiring and termination claims properly assertable by the named plaintiffs." *Vuyanich*, 723 F.2d at 1201. Thus, *Vuyanich* has little relevance to the present case.

Defendant also relies on *Stingley*, 836 F. App'x 286, cited above, for the proposition that allegations of "harassment and retaliation" are insufficient to exhaust administrative remedies for

a claim of "discriminatory denial of position." Dkt. 15 at 14. In *Stingley*, the plaintiff asserted a race discrimination claim premised on the fact that she, as an African American, was not permitted to work in "internet sales," while white employees were allowed to do so. *See Stingley*, 836 F. App'x at 290–91. However, the plaintiff's EEOC charge was wholly unrelated to her claim of race discrimination and, instead, "revolved entirely around [her colleague's] alleged harassment and [her employer's] purported retaliation." *Id.* at 291–92. Indeed, "the administrative proceeding did not involve a claim of racial discrimination at all" because the plaintiff believed that her colleague's harassment was the "byproduct of mental illness." *See Leger v. Jefferson County*, No. 20-cv-440, 2022 WL 2784461, at *6 n.7 (E.D. Tex. May 25, 2022) (quoting *Stingley*, 836 F. App'x at 289) (internal quotation marks omitted). Unlike the race discrimination claim in *Stingley*, the instant retaliation claim is "like or related to" the other retaliatory acts asserted in the First Charge (Dkt. 1-3).

Finally, Defendant cites *Ray v. Freeman*, 626 F.2d 439 (5th Cir. 1980), and argues that a plaintiff is forbidden from asserting "new acts of discrimination." Dkt. 15 at 14. However, *Ray* involved claims seeking redress for discriminatory acts occurring ***after*** the plaintiff filed the EEOC charge. *See Ray*, 626 F.2d at 442 ("By alleging post-February 1974 acts of discrimination for the first time in her complaint to the district court, [the plaintiff] would circumvent the entire administrative enforcement mechanism."). That is not the case here. *See Holden v. Ill. Tool Works, Inc.*, No. 06-2981, 2008 WL 183334, at *7 (S.D. Tex. Jan. 18, 2008) (distinguishing *Ray* on the same basis). In any event, the new claims asserted by the plaintiff were unrelated to the allegations contained in the EEOC charge. *See Ray*, 626 F.2d at 443. As explained repeatedly above, that is not the case here. For all of these reasons, the Court concludes that Plaintiff exhausted his administrative remedies with respect to this particular retaliation claim.

## 2.    Sufficiency of Allegations

In addition to its administrative exhaustion arguments addressed above, Defendant also contends that Plaintiff fails to state a claim with respect to each of his causes of action. *See* Dkt. 15 at 15–28. The Court addresses these arguments below.

### i.    Disparate Treatment

In the Complaint (Dkt. 1), Plaintiff alleges that his supervisor, Mr. Wilson, called him racial slurs, including the "N-word" and asked him to "discuss sexual matters." Dkt. 1 at 3. Based thereon, Plaintiff asserts that he was terminated because of his race, color, and sex. *See id.* Indeed, according to Plaintiff, because of Mr. Wilson's inappropriate comments, he complained to Human Resources and, when no investigation followed, he filed the First Charge (Dkt. 1-3), which precipitated a series of alleged retaliatory actions and, eventually, his termination. *See* Dkts. 1-3; 1-4. Defendant argues that these allegations are insufficient to state a discrimination claim because Plaintiff does not allege that it "treated similarly situated employees of other races, colors, or genders more favorably." Dkt. 15 at 16. Furthermore, Defendant argues that the only possible basis for Plaintiff's claims is "vague remarks unrelated to any employment decision that are remote in time." *See id.* at 18.[3] The Court agrees in part with Defendant.

A plaintiff need not establish a *prima facie* case at the pleading stage; instead, to state a claim of disparate treatment, a plaintiff need only plausibly allege: "(1) an 'adverse employment action,' (2) taken against a plaintiff '***because of*** [his] protected status.'" *Cicalese v. Univ. of Tex Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (emphasis in original) (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)). A plaintiff may meet this burden by, for example, "identifying derogatory remarks about the protected class or status, a discrepancy or reduction in

---

[3] As explained in greater detail below, *see infra* note 7, the Court declines to consider Defendant's allegation—contained in the Second Motion to Dismiss (Dkt. 15)—that Mr. Wilson, like Plaintiff, is African American. *See* Dkt. 15 at 17, 19. Such extraneous allegations cannot be considered at this juncture.

pay, or a demotion." *Stollings v. Tex. Tech Univ.*, No. 20-cv-250, 2021 WL 3748964, at *11 (N.D. Tex. Aug. 25, 2021) (first citing *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 118 (4th Cir. 2021); and then citing *Cicalese*, 924 F.3d at 768).

In the present case, Plaintiff alleges that Mr. Wilson—his supervisor—called him racial slurs, including the "N-word," in the workplace. *See* Dkt. 1 at 3. When Plaintiff reported this abusive behavior, Plaintiff asserts that he suffered increased harassment by Mr. Wilson, and a pattern of retaliation, ultimately resulting in Plaintiff's termination. *See* Dkts. 1-3; 1-4. The Court is satisfied that these allegations are sufficient, at this early stage, to plausibly allege a claim of disparate treatment based on Plaintiff's race. Defendant's arguments to the contrary are better suited for the summary judgment stage. *See, e.g.*, *Cicalese*, 924 F.3d at 768 ("The court's analysis of the complaint's allegations—scrutinizing whether [the plaintiffs'] fellow employees were really 'similarly situated' and whether [the dean's and the chairman's] derogatory statements about Italians amounted to 'stray remarks'—was more suited to the summary judgment phase."); *Garrett v. Kohls Distrib. Efulfillment Ctr.*, No. 23-cv-2525, 2024 WL 3237184, at *6 (N.D. Tex. June 7, 2024) ("[T]he derogatory remarks that [the plaintiff] alleges, which he alleges were also made by management, regarding his gender are enough—at this stage—to state the fourth ultimate element."), *R. & R. adopted*, 2024 WL 3240656 (N.D. Tex. June 28, 2024).

However, the Court agrees that Plaintiff's allegations are insufficient to state a disparate treatment claim based on his gender. The only allegation even tangentially related to Plaintiff's gender is Mr. Wilson's alleged request to "discuss sexual matters." Dkt. 1 at 3. Such a vague allegation provides little indication that Plaintiff was ultimately terminated because of his gender—and it certainly does not push Plaintiff's claim across the plausibility threshold. *See, e.g.*, *Stewart v. City of Arcola*, No. 23-cv-4387, 2024 WL 3297361, at *2 (S.D. Tex. July 3, 2024) ("The 'overweight lover' comment, without more, is not sufficient to tie her termination to her protected

status."); *see also Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021) ("In sum, the complaint does not plead any facts that would permit a reasonable inference that [the defendant] terminated [the plaintiff] because of gender identity."). Thus, Plaintiff's disparate treatment claim based on his gender should be dismissed.

ii.    **Retaliatory Discharge**

In the Complaint (Dkt. 1), Plaintiff asserts that Defendant terminated his employment in retaliation for his filing of the First Charge (Dkt. 1-3). *See* Dkt. 1 at 3. Plaintiff also attached and referenced the Second Charge (Dkt. 1-4), wherein he explained that he was "repeatedly retaliated against." *See* Dkt. 1-4 at 1. Indeed, Plaintiff asserted a pattern of mistreatment following the filing of the First Charge (Dkt. 1-3), which culminated in an altercation with Mr. Wilson and his subsequent termination—purportedly due to the "aggressive nature" of that incident. *See id.* at 1–3. Defendant argues that these allegations are insufficient because Plaintiff has not alleged a causal connection between the First Charge (Dkt. 1-3) and his subsequent discharge. Dkt. 15 at 21. Furthermore, Defendant argues that the five-month gap between the First Charge (Dkt. 1-3) and Plaintiff's termination is too long to support the inference of a causal connection. *See id.* at 22. Once again, Plaintiff does not specifically respond to these arguments. *See* Dkts. 18; 21. The Court disagrees with Defendant.

A retaliation claim is comprised of three essential elements: (1) a "protected activity"; (2) "an adverse employment action"; and (3) "a causal link between them." *Yates v. Univ. of Miss. Med. Ctr. – Jackson*, 691 F. Supp. 3d 721, 727 (S.D. Miss. 2023) (citing *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021)). To plausibly allege the causation element, a plaintiff must "plead facts permitting a reasonable inference" that the defendant terminated the plaintiff due to the protected activity. *See Wright*, 990 F.3d at 433 (citing *Iqbal*, 556 U.S. at 678). "Evidence for a causal connection includes: temporal proximity between a protected act and adverse

14

employment action; an employment record that does not support the adverse action; and an employer's departure from typical policies and procedures." *Garvin v. Sw. Corr., L.L.C.*, 391 F. Supp. 3d 640, 653 (N.D. Tex. 2019) (citing *Blasingame v. Eli Lilly & Co.*, No. 11-4522, 2013 WL 5707324, at *15 (S.D. Tex. Oct. 18, 2013)); *see English v. Perdue*, 777 F. App'x 94, 98 (5th Cir. 2019) ("Among other factors, we have suggested that an employee's 'past disciplinary record,' and employer's departure from 'typical policy and procedure,' and 'the temporal relationship between the employees conduct and discharge' might shed light on the causal component of a retaliation claim." (quoting *Nowlin v. Resol. Tr. Corp.*, 33 F.3d 498, 508 (5th Cir. 1994))). "Temporal proximity alone may suffice when the acts are separated by weeks, but a gap of five months is not sufficient without other evidence of retaliation." *Garvin*, 391 F. Supp. 3d at 653 (citing *Blasingame*, 2013 WL 5707324, at *15).

In the present case, Plaintiff plausibly alleges a claim of retaliatory discharge. In the Second Charge (Dkt. 1-4), Plaintiff asserted that he faced a series of retaliatory acts culminating in the termination of his employment. *See* Dkt. 1-4. According to Plaintiff, in March 2022, he was brought into a meeting with Human Resources and "told that he was performing poorly"—a complaint he had never received throughout the duration of his employment. *See id.* at 2. In addition, Plaintiff asserted that other employees were "not held accountable for similar occurrences." *Id.* Plaintiff further asserted that he overheard other employees discussing the fact that "management had intentionally 'messed up [his] G5 work on purpose to get him in [Human Resources].'" *Id.* In other words, Plaintiff alleged that he was "being set up so he could be terminated." *Id.*

Defendant is correct that the five-month gap between the filing of the First Charge (Dkt. 1-3) and Plaintiff's eventual termination is too lengthy—in and of itself—to furnish the causal connection necessary to survive a motion to dismiss. *See* Dkt. 15 at 22. However, as identified

above, Plaintiff provided more than just temporal proximity. According to Plaintiff, during the five months following the filing of the First Charge (Dkt. 1-3), Defendant began treating him differently than other employees and, indeed, even "messed" with his work to establish a pretext for his termination. *See* Dkt. 1-4 at 1–2. These allegations are plainly sufficient, at this early stage, "to show a causal connection between the protected activity and adverse employment action." *See, e.g.*, *Garvin*, 391 F. Supp. 3d at 653 (finding the plaintiff plausibly alleged retaliation when there was "approximately one year" between the protected activity and the adverse employment action because the defendant "failed to follow its usual policies," and the plaintiff's "employment record did not warrant such actions").

### iii.    Other Retaliation Claims

In the Complaint (Dkt. 1), Plaintiff also asserts a number of other purportedly retaliatory actions which occurred after he reported Mr. Wilson to Human Resources and submitted the First Charge (Dkt. 1-3). *See* Dkt. 1 at 3. Specifically, Plaintiff alleges that his transfer request was denied, he was subjected to increased work scrutiny, he was denied access to mandatory training, and he faced verbal abuse from Mr. Wilson. *Id.* With respect to these allegedly retaliatory actions, Defendant argues that "Plaintiff provides no context or factual allegations whatsoever indicating that these actions were materially adverse, or that they affected his job title, grade, hours, salary, or benefits, or effected a diminution in prestige or change in standing among co-workers, as opposed to constituting petty slights and minor annoyances." Dkt. 15 at 26–27. Plaintiff does not address this argument in his responsive briefing. *See* Dkts. 18; 21. The Court agrees with Defendant.[4]

---

[4] Defendant also argues that Plaintiff has not sufficiently alleged a causal connection between the protected activity and each adverse action. *See id.* at 28. Because Plaintiff's retaliation claims fail on other grounds, the Court need not address this argument in great detail. However, the Court notes that, for the reasons discussed with respect to Plaintiff's retaliatory discharge claim, Plaintiff sufficiently alleges this element.

A claim for retaliation requires, *inter alia*, an "adverse employment action." *Yates*, 691 F. Supp. 3d at 727 (citing *Wright*, 990 F.3d at 433). In the retaliation context, an adverse employment action is one that a reasonable employee would consider to be "materially adverse"; that is, actions which would dissuade a "reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted). While this standard is objective, "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 69. For example, "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children." *Id.* (citation omitted). Nevertheless, Title VII does not protect employees from "petty slights, minor annoyances, and simple lack of good manners." *Id.* at 68.

In the present case, Plaintiff alleges that he was subjected to a series of adverse actions in retaliation for reporting Mr. Wilson's conduct and for filing the First Charge (Dkt. 1-3). While the Court recognizes that these allegations, in some contexts, ***could*** substantiate claims of retaliation, the present allegations, including those assertions contained in the First Charge (Dkt. 1-3) and the Second Charge (Dkt. 1-4), lack the "specificity and context" necessary to push them "across the line from conceivable to plausible." *See Stancu v. Highland Hilton/HEI Hotels & Resorts*, No. 23-cv-894, 2024 WL 3166447, at *8 (N.D. Tex. June 6, 2024), *R. & R. adopted*, 2024 WL 3172717 (N.D. Tex. June 24, 2024); *Turner*, 663 F.3d at 775 (quoting *Twombly*, 550 U.S. at 570). In other words, as currently constructed, these claims appear to be based on petty slights rather than materially adverse employment actions. For this reason, Plaintiff's retaliation claims, excluding his retaliatory discharge claim discussed above, should be dismissed.

### iv.    Hostile Work Environment

In the Complaint (Dkt. 1), Plaintiff alleges that Mr. Wilson, Plaintiff's supervisor, called him "racial slurs," including the "N-word," and asked him to "discuss sexual matters." Dkt. 1 at 3. In the First Charge (Dkt. 1-3), Plaintiff asserted that "Mr. Wilson . . . regularly used racial epithets in the workplace" and, at some point, asked him to "discuss sexual matters." Dkt. 1-3 at 1. Based thereon, Plaintiff asserted that Mr. Wilson created a "hostile work environment." *Id.* at 1–2.[5] Defendant argues that these allegations are insufficient to establish a hostile work environment. *See* Dkt. 15 at 22–25. Specifically, Defendant contends that Plaintiff has not alleged that Mr. Wilson's inappropriate comments affected a term, condition, or privilege of his employment; that is, the statements were not "sufficiently severe or pervasive." *See id.* at 23–24. Once again, Plaintiff did not respond to these arguments. *See* Dkts. 18; 21. The Court agrees in part with Defendant.

> To sufficiently allege a hostile work environment claim, the plaintiff must plead that:
>
> (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on his protected status; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*E.E.O.C. v. AOD Ventures, Inc.*, No. 21-cv-418, 2022 WL 4367199, at *3 (E.D. Tex. Mar. 31, 2022) (cleaned up) (quoting *Hernandez*, 670 F.3d at 651). "When a plaintiff alleges harassment by a supervisor, 'the plaintiff need only meet the first four elements of the test.'" *Id.* (quoting

---

[5] In the Complaint (Dkt. 1) and the First Charge (Dkt. 1-3), Plaintiff alleges that he was subjected to several other unsavory acts at the hands of Mr. Wilson and Human Resources. However, Plaintiff alleges that these acts were taken in retaliation for complaining about Mr. Wilson's conduct—not because of his race or gender. *See* Dkts. 1 at 3; 1-3 at 1–2. Thus, the Court does not consider these events for this analysis. *See, e.g.*, *Thomas v. Cook Child's Health Care Sys.*, No. 22-10535, 2023 WL 5972048, at *3 (5th Cir. Sept. 14, 2023) ("Because we 'do not consider . . . incidents of harassment not based on race,' [the plaintiff's] complaint has failed to plausibly allege facts that demonstrate he was repeatedly subjected to harassment based on his race." (omission in original) (quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012))).

*Wilson v. Republic Nat'l Indus. of Tex., LP*, No. 19-cv-593, 2019 WL 3859666, at *3 (N.D. Tex. Aug. 16, 2019)).

"Harassment affects a 'term, condition, or privilege of employment' if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Hernandez*, 670 F.3d at 651 (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). Whether a work environment is "sufficiently hostile" is determined by the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Ramsey*, 286 F.3d at 268). While a "single instance of a racial epithet does not, in itself, support a claim of hostile work environment," "a single incident of harassment, if sufficiently severe, can give rise to a viable Title VII claim." *Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022) (cleaned up) (first citing *Mosley v. Marion County*, 111 F. App'x 726, 728 (5th Cir. 2004) (per curiam); and then quoting *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 400 (5th Cir. 2007)). Indeed, "perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as the N-word by a supervisor in the presence of his subordinates." *Id.* (cleaned up).

In the present case, Plaintiff alleges that Mr. Wilson—his supervisor—called him racial slurs, including the "N-word," in the workplace. *See* Dkt. 1 at 3; *see also* Dkt. 1-3 at 1. Such an allegation is sufficient, at this early stage of the proceedings, to plausibly allege a hostile work environment based on Plaintiff's race. *See, e.g.*, *Woods*, 29 F.4th at 285; *Hill v. Brown*, No. 21-2516, 2022 WL 3094329, at *10 (W.D. La. July 19, 2022), *R. & R. adopted*, 2022 WL 3093861 (W.D. La. Aug. 3, 2022); *accord Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 580 (D.C. Cir. 2013) (Kavanaugh, J., concurring) (per curiam) ("[I]n my view, being called the n-word by a

supervisor—as [the plaintiff] alleges happened to him—suffices by itself to establish a racially hostile work environment."). Whether this claim will be borne out in discovery is another question not currently before the Court.[6]

However, the Court agrees that Plaintiff's allegations are insufficient to state a hostile work environment claim based on his gender. The only allegation purportedly related to Plaintiff's gender is Mr. Wilson's request to "discuss sexual matters." Dkt. 1 at 3. This vague allegation, taken as true, provides little indication that Plaintiff was subjected to harassment based on his gender. Without this connection, Plaintiff's allegations are plainly insufficient to plausibly allege a hostile work environment based on gender. *See, e.g.*, *Hunter v. Jefferson Par. Pub. Sch. Sys.*, No. 17-2015, 2017 WL 2910992, at *8 (E.D. La. July 7, 2017) (quoting *Raj*, 714 F.3d at 331). Nor is there any indication that this "harassment was severe and pervasive or that the allegation goes beyond the single event." *E.g.*, *Acklin v. City of Conroe*, No. 22-cv-3713, 2023 WL 5279813, at *10 (S.D. Tex. June 20, 2023). Thus, to the extent Plaintiff intends to bring a hostile work environment claim based on his gender, it should be dismissed.

## C.    Leave to Amend

A "plaintiff's failure to meet the specific pleading requirements should not automatically or inflexib[ly] result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citation omitted). Further, a *pro se* litigant should generally be offered an opportunity to amend his complaint before it is dismissed. *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). "Granting leave to amend is not required, however, if the plaintiff

---

[6] For example, Defendant asserts that Mr. Wilson "is also African American." Dkt. 15 at 23. This assertion, if true, could—depending on the circumstances of their utterance—materially alter whether the racial epithets created a hostile work environment. However, at this juncture, the Court is bound to accept Plaintiff's allegations as true and is prohibited from considering any "extraneous allegations." *Morris v. City of New Orleans*, 350 F. Supp. 3d 544, 551–52 (E.D. La. 2018).

has already pleaded his 'best case.'" *Id.* at 768 (quoting *Bazrowx*, 136 F.3d at 1054). The Court can deny leave to amend where such an amendment would be futile. *See, e.g.*, *Isom v. U.S. Dep't of Homeland Sec.*, No. 20-cv-948, 2021 WL 2232052, at *3 (E.D. Tex. Apr. 28, 2021), *R. & R. adopted*, 2021 WL 2224345 (E.D. Tex. June 2, 2021).

In the present case, Plaintiff is proceeding *pro se*, and this is the first time that the Court has addressed the sufficiency of his allegations. Furthermore, with respect to Plaintiff's retaliation claims, additional factual allegations could provide the necessary "specificity and context" needed to push them across the line from conceivable to plausible. *Stancu*, 2024 WL 3166447, at *8. Similarly, Plaintiff could include additional factual detail with respect to his disparate treatment claim and hostile work environment claim based on his gender. The live pleading only includes one page of perfunctory allegations. *See* Dkt. 1 at 3. Thus, if given the opportunity, Plaintiff could provide any additional factual allegations supporting the inference that he was terminated or subjected to a hostile work environment because of his gender. For these reasons, Plaintiff should be given leave to amend these claims prior to dismissal.

## IV.    RECOMMENDATION

For the foregoing reasons, the Court recommends that the Second Motion to Dismiss (Dkt. 15) be **GRANTED IN PART** and **DENIED IN PART** as follows:

- The Second Motion to Dismiss (Dkt. 15) should be **DENIED AS MOOT** to the extent it seeks dismissal of Plaintiff's claims under Rule 12(b)(5).

- The Second Motion to Dismiss (Dkt. 15) should be **DENIED** to the extent that it seeks dismissal based on Plaintiff's failure to exhaust his administrative remedies.

- The Second Motion to Dismiss (Dkt. 15) should be **GRANTED** as to Plaintiff's claims of retaliation, disparate treatment based on gender, and hostile work environment based on gender, excluding his retaliatory discharge claim, for failure to state a claim upon which relief can be granted. These claims should be **DISMISSED WITHOUT PREJUDICE**, and Plaintiff should be given leave to file an amended complaint with respect to these claims, rectifying the deficiencies identified herein, no later than fourteen (14) days after the entry of the

Memorandum Adopting Report and Recommendation, if any. If Plaintiff fails to timely file an amended complaint, these claims should be **DISMISSED WITH PREJUDICE**.

- The Second Motion to Dismiss (Dkt. 15) should be **DENIED** with respect to Plaintiff's claims of disparate treatment based on his race, retaliatory discharge, and hostile work environment based on his race.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a de novo review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 29 U.S.C. § 636(b)(1) (extending the time to file objections from ten (10) to fourteen (14) days).

**So ORDERED and SIGNED this 9th day of August, 2024.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE